

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

DEON CARTER, )
)
    Petitioner, )
)
v. ) Civil Action No. 3:09CV121-HEH
)
COMMONWEALTH OF VIRGINIA, )
)
    Respondent. )

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2254 Petition)

Deon Carter, a Maryland inmate proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss on the grounds that the petition is barred by the one-year statute of limitations governing federal habeas petitions. Carter has responded and moved for leave to supplement his petition. Carter's motion for leave to supplement his petition will be granted. In deciding the motion to dismiss, the Court will consider Carter's brief filed on July 29, 2009.

### I. PROCEDURAL HISTORY

Carter pleaded guilty in the Circuit Court for the County of Westmoreland ("Circuit Court") to the first degree murder of Francis M. Bailey, robbery, and use of a firearm during the commission of a murder. The Circuit Court sentenced Carter to an active term of imprisonment of life plus thirteen years. On July 1, 2002, the Circuit Court entered final judgment on Carter's convictions and sentences. Carter did not appeal.

On January 16, 2008, Carter filed a petition for a writ of habeas corpus with the Circuit Court. On March 19, 2008, the Circuit Court denied the petition on the grounds that it was barred by the statute of limitations set forth in section 8.01-654(A)(2) of the Virginia Code. On February 10, 2009, Carter filed his 28 U.S.C. § 2254 petition. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

## II. CARTER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Carter contends that he is entitled to relief because he was denied the effective assistance of counsel. Specifically, Carter asserts that:

> trial counsel was ineffective in (a) failing to conduct a thorough investigation before advising Petitioner to plead guilty; (b) failing to interview Petitioner's co-defendant, Lajuan Davis, who later admitted that he had in fact committed the murder of Mr. Francis M. Bailey and was willing to testify on behalf of Petitioner if Petitioner's trial attorney, Mark S. Gardner and Beverly Haney, had come to talk to him; (c) failing to interview Robert Tyson, a co-conspirator who was found in possession of victim's (Francis Bailey) credit card and admitted to authorities once arrested that Lajuan Davis gave him the credit card; (d) using the Death Penalty as a form of coercion and as a means to convince Petitioner to plead guilty even after Petitioner repeatedly protested his innocence; (e) Failing to disclose to Petitioner a conversation that took place between trial counsels, Mark Gardner and Beverly Haney, Detective Bill England, and Commonwealth's Attorney, Peggy Garland; [f] failing to find and gather mitigating evidence. [g] Petitioner maintains that ... based on the cumulative effect of the errors committed, trial counsel provided ineffective assistance. . . .

(Mem. in Supp. of § 2254 Pet. 2.)

## III. LIMITATIONS PERIOD FOR FEDERAL HABEAS RELIEF

Carter's petition for a writ of habeas corpus is subject to a one-year statute of limitations. Specifically, the pertinent statute provides:

2

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## IV. ANALYSIS

Carter's conviction became final, as that term is defined in 28 U.S.C. § 2244(d)(1)(A), on July 31, 2002, the last date to note an appeal. *See Clay v. United States*, 537 U.S. 522, 527 (2003); Va. Sup. Ct. R. 5:14(a). Hence, Carter had one year from that date, or until July 31, 2003, to file this federal petition for a writ of habeas corpus. Carter did not file the present federal petition for a writ of habeas corpus until more than five and a half years after that date. Thus, the present action is barred by the federal statute of limitations, unless Carter demonstrates that he is entitled to a belated

commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)-(D) or equitable tolling of the statute of limitations.

A.  **Belated commencement of the limitation period**

Carter contends that he is entitled to a belated commencement on the ground that he was prevented from presenting his claims earlier because his trial counsel failed to provide him all of his file on the case until November 20, 2008. Carter contends that under 28 U.S.C. § 2244(d)(1)(B), the limitation period should commence on that date. Any delay by trial counsel in turning over the case file to Carter is not "State action" or "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2244(d)(1)(B); *see Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1331 (11th Cir. 2008) ("'incompetent'" post-conviction performance by counsel "'is not the type of State impediment envisioned in § 2244(d)(1)(B)'") (quoting *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005)); *id.* at 1332 (concluding inmate was not entitled to belated commencement under the limitation period based on state's objection to the production of documents where inmate failed to demonstrate such objection was unconstitutional). Accordingly, Carter is not entitled to a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B).

Carter also suggests that counsel's delay in turning over the case file warrants a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(D). Under that section, the limitation period commences when the factual predicate for a petitioner's

4

claim could have been discovered through the exercise of due diligence, not when it was actually discovered by the petitioner. *See, e.g., Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). In order to warrant a belated commencement under that provision, Carter must demonstrate that he acted with due diligence in attempting to obtain his case file. *See Johnson v. United States*, 544 U.S. 295, 311 (2005). Carter has failed to demonstrate that he diligently requested his file from counsel in the years immediately following his guilty plea. Carter's correspondence with counsel from 2006 until 2008 indicates that trial counsel was happy to provide Carter with documents from the file upon a request for the same. In light of these circumstances, it appears the facts supporting Carter's ineffective assistance of counsel claims could have been discovered with due diligence within the year following the entry of his conviction, or by July 1, 2003. Because Carter failed to file any petition for a writ of habeas corpus within a year of July 1, 2003, the present action is still barred by the statute of limitations.

### B.  Equitable Tolling

Equitable tolling is "reserved for those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). "[T]o be entitled to equitable tolling, an otherwise time-barred petitioner must present '(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.'" *United States v. Sosa,*

364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003)). Additionally, a petitioner seeking equitable tolling bears the burden of establishing that he or she has been pursuing his or her rights diligently. *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005).

### 1. Alleged delay by trial counsel in providing case file to Carter

Carter is not entitled to equitable tolling of the limitation because of any delay by trial counsel in providing him with the case file. As discussed above, Carter fails to demonstrate that he diligently sought the file. Moreover, he waited almost a year after the denial of his state petition for a writ of habeas corpus before filing his federal petition for a writ of habeas corpus. *Id.* at 419 (refusing to equitably toll limitation period where inmate waited five months after state post-conviction proceeding became final to seek federal habeas relief).

### 2. Actual Innocence

Carter also contends that the Court should toll the limitation period because he is actually innocent. Neither the Supreme Court nor the Fourth Circuit has decided whether a claim of actual innocence warrants tolling of the statute of limitations. Nevertheless, before addressing this difficult question, the Court should first consider whether Carter has made a sufficient showing of actual innocence. *Robinson v. Johnson,* No. 3:08cv00789, 2009 WL 2447939, at *3 (E.D. Va. Aug. 6, 2009) (citing *Johnson,* 513 F.3d at 1333). "Claims of actual innocence, whether presented as freestanding ones, *see Herrera v.*

*Collins,* 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, *see Schlup v. Delo,* 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene,* 155 F.3d 396, 404 (4th Cir. 1998) (additional parallel citations omitted). Here, the Court reviews Carter's claim under the more lenient standard for gateway claims set forth in *Schlup* because Carter's actual innocence claim would allow the Court to consider his otherwise time-barred constitutional claims.

"[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell,* 547 U.S. 518, 536-37 (2006) (quoting *Schulp,* 513 U.S. at 327). "[A] gateway claim requires 'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial.'" *Id.* at 537 (quoting *Schulp,* 513 U.S. at 324). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup,* 513 U.S. at 324. The Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House,* 547 U.S. at 538 (*quoting Schlup,* 513 U.S. at 327-28). The Court need not proceed to the second step of the inquiry unless the petitioner first supports his claim with evidence of the requisite quality. *See Weeks v.*

*Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999).

Here, Carter's claim of actual innocence is founded on the affidavit of Lujuan Davis, a fellow participant in the murder and robbery of Francis M. Bailey. In this affidavit, Davis represents:

> On about July 7, 2000, in the county of Westmoreland, Virginia. Mr. Carter and I were both living at Mr. Carter's grandfather house in Westmoreland, county on the night I committed the murder. We both were at Mr. Carter's uncle house using the telephone trying find away back to Baltimore, Maryland. I had gotten upset because things weren't going right. I then left Mr. Carter in the house on the phone talking to his girlfriend. I then walked over to Mr. Carter's grandfather house and once I got inside his grandfather house. I got his grandfather shotgun and went on my own looking for a car to get back to Baltimore.
> It was then I came upon Mr. Bailey house. I looked inside Mr. Bailey's window and saw him sitting alone in his living room. It was then I decided that I was going to take his car and kill him. So I checked his front door and it was open, so I proceeded to go in the house. I approached him with the shotgun and made him lay down on the floor with a pillow over his head.
> After taking his wallet and car, I went outside by a tree and shot him in the back of the head with the shotgun. I then took his car and picked up Mr. Carter at his uncle's house. Mr. Carter asked w[h]ere did I get the car and I told him I stole it. However, I never told Mr. Carter about the murder that I had just committed.

(Mem. in Supp. of § 2255 Mot., Davis Aff.)

The Supreme Court has instructed that, "when considering an actual-innocence claim in the context of a request for an evidentiary hearing, the District Court need not 'test the new evidence by a standard appropriate for deciding a motion for summary judgment,' but rather may 'consider how the timing of the submission and the likely

credibility of the affiants bear on the probable reliability of that evidence.'" *House*, 547 U.S. at 537 (quoting *Schulp*, 513 U.S. at 331-32.) First, because the Davis Affidavit only was made after Davis's federal and state charges related to the murder and robbery of Francis Bailey had been completed, the veracity of the affidavit is highly suspect. *Drew v. Scott*, 28 F.3d 460, 463 (5th Cir. 1994) (rejecting actual innocence claim predicated on codefendant's statements made after he had nothing to lose by exculpating defendant); *United States v. Vergara*, 714 F.2d 21, 23 (5th Cir. 1983) (holding that the district court may deny the defendant a new trial, without an evidentiary hearing, if it determines that a previously silent accomplice's post-conviction willingness to exculpate his codefendant is not credible); *see also In re Byrd*, 269 F.3d 585, 605 (6th Cir. 2001) (Suhrheinrich, J., dissenting).

Furthermore, the undersigned presided over the bench trial on the federal charges related to Davis's participation in the murder and robbery of Francis M. Bailey.[1] Given Davis's numerous, detailed statements regarding Carter's participation in the robbery and murder of Bailey, Davis's current cursory attempt to exonerate Carter is not colorable.

---

[1] Following a bench trial, Lajuan Davis was convicted of one count of conspiracy, in violation of 18 U.S.C. § 371; one count of conspiracy to commit flight to avoid prosecution, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1073; one count of carjacking, in violation of 18 U.S.C. §§ 2119 and 2; one count of use of a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c); one count of interstate transportation of a stolen automobile, in violation of 18 U.S.C. §§ 2312, 2313; and multiple counts of bank fraud, in violation of 18 U.S.C. § 1344 and wire fraud, in violation of 18 U.S.C. § 1343. The subsequent references to transcripts, refer to the transcripts in *United States v. Davis*, 3:05cr285 (E.D. Va. June 9, 2006).

Specifically, Davis told a state prosecutor that he accompanied Carter to Bailey's house, they both assaulted Bailey, and then Carter took Bailey outside and shot him. (Feb. 22, 2006 Tr. 54, 63-6.) Additionally, Lieutenant England of the Westmoreland County Sheriff's Department, testified as to Davis's statements made on March 28, 2001, in Baltimore, Maryland. That statement also demonstrates Carter's guilt in the murder and robbery of Bailey:

> Mr. Davis stated that some type of idea came up that they were going to carjack somebody to get them to bring them back up the road. Mr. Carter got the shotgun and loaded it, they were going across the field and go down the road to carjack somebody. . . .
> Mr. Davis stated that he went to the front window and looked in and saw a white guy sitting on the couch. Mr. Carter went to the side of the house to the kitchen door, at which time Mr. Davis came around. Mr. Davis stated they went into the house, met Mr. Bailey at shotgun point. Mr. Carter told Mr. Bailey to put the pillow over his face so he wouldn't see them.
> Got his car keys, got his ATM card. Mr. Davis said Mr. Carter took and followed Mr. Bailey out of the house with the shotgun in the back of his head. Mr. Davis said that he went to the car and sat in the car, a few minutes later he hears a gunshot. . . .
> Mr. Davis said Mr. Carter came back to the car and threw the shotgun and the wallet in the back seat, and off to Baltimore they went.

(Feb. 22, 2006 Tr. 217-18.)

Peggy Garland, the former Commonwealth's Attorney for Westmoreland County, also recounted Davis's statements made on March 28, 2001. In addition to the above information, Ms. Garland provided further details reflecting Carter's guilt in the murder of Bailey: "Then they argued, according to Davis, about whether to tie [Bailey] up or shoot him. Davis claimed that he argued against shooting him and wanted to tie him up,

10

but Carter insisted." (Feb. 22, 2006 Tr. 233.) Davis also provided a statement to FBI agent James Orr, in connection with a polygraph test conducted on April 19, 2001. During that interview, Davis also represented that Carter had "insisted" on killing Bailey because "they couldn't have witnesses." (Feb. 22, 2006 Tr. 259.)

Additionally, Davis told a cellmate, Vincent Noel, that both he and Carter participated in the robbery and murder of Francis Bailey. (Feb. 22, 2006 Tr. 156-57.) Davis represented to Noel that he was standing next to Carter as Carter executed Bailey. (Feb. 22, 2006 Tr. 157.) Davis told Noel that "Carter had [the shotgun] to [Bailey's] head and popped his whole head off. And he said his head opened up like this. He popped his head off." (Feb. 22, 2006 Tr. 157.)

Given Davis's prior statements implicating Carter in the murder of Bailey and the timing of Davis's affidavit, the Court concludes that Davis's affidavit is not "trustworthy" and does not constitute "reliable" evidence of innocence sufficient to support a claim of actual innocence. *Schulp*, 513 U.S. at 324. Davis's affidavit does not qualify as the sort of new reliable evidence described by the Supreme Court. *Schlup*, 513 U.S. at 324; *Melson v. Allen*, 548 F.3d 993, 1002-03 (11th Cir. 2008), *cert. denied*, 130 S. Ct. 254 (2009). To accept such commonplace declarations would ignore the Supreme Court's admonition that the quality of evidence necessary to support a claim of actual innocence "is obviously unavailable in the vast majority of cases." *Schlup*, 513 U.S. at 324; *see Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (emphasizing that new reliable

11

evidence of innocence is a "rarity"); *Drew v. State*, 743 S.W.2d 207, 228 (Tex. Crim. App. 1987) ("It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement."). Accordingly, Carter is not entitled to equitable tolling of the limitation period. The motion to dismiss will be granted. The petition for a writ of habeas corpus will be denied. The action will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

                                         /s/
                              HENRY E. HUDSON
                              UNITED STATES DISTRICT JUDGE

Date: Jan. 26, 2010
Richmond, Virginia